IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DEBRA J. SUTTON, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 04-646-S-LMB |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) | |
| | ) | |
| Respondent. | ) | |
| _____) | | |

Currently pending before the Court is Debra J. Sutton's Petition for Review seeking review of Respondent's decision to deny her application for Supplemental Security Income benefits under Title XVI of the Social Security Act. The action is brought pursuant to 42 U.S.C. § 405(g).

Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

I.

ADMINISTRATIVE PROCEEDINGS

Debra J. Sutton ("Petitioner" or "Claimant") applied for supplemental security income benefits under Title XVI of the Social Security Act on February 20, 2002. (AR 16). Petitioner alleged disability beginning February 20, 2002, due to asthma and chronic obstructive pulmonary disease. (AR 17). Petitioner's application was denied initially and again after reconsideration. (AR 38, 45). Petitioner filed a timely request for a hearing before an Administrative Law Judge. (AR 37). ALJ Gilbert Martinez held a hearing on February 4, 2004, at which time Petitioner, represented by counsel, appeared and testified. (AR 202). Clark

**MEMORANDUM DECISION & ORDER -1-**

Newhall, M.D., medical expert, and Anne F. Aastum, M.Ed., vocational expert, also testified. *Id.* On June 1, 2004, the ALJ issued a decision denying Petitioner's claim because he found Petitioner retains the capacity for work that exists in significant numbers in the national economy and is therefore not under a disability as defined in the Social Security Act. (AR 24).

Petitioner requested the Appeals Council review the ALJ's decision. (AR 8). The Appeals Council denied Petitioner's request on November 9, 2004, making the ALJ's decision the final decision of the Commissioner of Social Security. (AR 3).

Having exhausted her administrative remedies, Petitioner timely filed this instant action. Petitioner argues that the ALJ improperly evaluated the requirements of Listing 3.03 for asthma, improperly rejected the opinions of her treating medical providers, and improperly denied her motion for an IQ exam. *Petitioner's Brief in Support of Petition for Review*, p. 2 (Docket No. 11).

Petitioner now requests that the ALJ's decision be remanded for further consideration. *Id.* at p. 11.

## II.

## BACKGROUND

At the time of the hearing before the ALJ, Petitioner was a forty-one year old woman with an eleventh grade education. (AR 17). She has past work experience as a general farm worker and as a harvest worker. *Id.*

## III.

## STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). In evaluating the

**MEMORANDUM DECISION & ORDER -2-**

evidence at an administrative hearing, the ALJ must follow a five-part sequential process. 20 C.F.R. §§ 401.1520, 416.920 (2005). The second part of that process involves a determination regarding whether the claimant has a "severe impairment." 20 C.F.R. § 416.905(a). If no "severe" impairment is found, the claimant will be found not to be disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence . . . ." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019. The ALJ

**MEMORANDUM DECISION & ORDER -3-**

is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *See Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).  Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases." *Id*. at 1095 (citation omitted).

The issues presented in the instant appeal are whether the following findings are based on application of proper legal standards: (1) that Petitioner's asthma does not meet or equal the requirement of Listing 3.03 for asthma; (2) the rejection of the opinions of Petitioner's treating medical providers; and (3) the denial of Petitioner's motion for an IQ exam.[1]

---

[1] The only standard to be applied in the instant appeal is a determination of whether the ALJ's conclusions are based on application of proper legal standards.  Petitioner has not challenged any of the ALJ's factual determinations.  *Petitioner's Brief in Support of Petition for Review*, p. 2 (Docket No. 11).

**MEMORANDUM DECISION & ORDER -4-**

IV.

DISCUSSION

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (2005).

**A.     Sequential Process**

The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). If the answer is in the affirmative, disability benefits are denied. 20 C.F.R. § 404.1520(b). In the instant action, the ALJ concluded that Petitioner has not engaged in substantial gainful activity since the alleged onset of disability. (AR 17, 23).

The second step requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the answer is in the negative, disability benefits are denied. 20 C.F.R. § 404.1520(c). In the instant action, the ALJ found that Petitioner has medically determinable physical impairments of chronic obstructive pulmonary disease and asthma, which are severe inasmuch as they result in work-related limitations. (AR. 17, 23).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the answer is in the affirmative, the claimant is disabled and benefits are awarded. 20 C.F.R. § 404.1520(d). In the instant action, the ALJ concluded that Petitioner's impairments are severe within the meaning of the Regulations, but

not severe enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 5.  (AR 18, 23).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  In this respect, the ALJ concluded that Petitioner retains the residual functional capacity to frequently lift and carry fifteen pounds; occasionally lift and carry thirty pounds; sit for two to three hours at a time or a total of six hours in an eight hour workday; stand for two hours at a time or a total of six hours in an eight hour workday; occasionally climb stairs and squat; and frequently walk, bend, stoop, kneel, reach above her shoulders, push or pull, turn her arms and wrists, open and close her fists, use her hands and fingers, and use foot controls.  (AR 21, 23–24).  Also, the ALJ concluded that Petitioner has mild limitations in her ability to concentrate, remember, understand, exercise judgment, remember work procedures, perform duties within a schedule, sustain routines without supervision, interact with the general public, and get along with co-workers.  (AR 21, 24).  Additionally, the ALJ found Petitioner has mild to moderate limitations in her ability to deal with stress and mild restrictions to tolerate air pollutants.  *Id*.  Seeing as such, the ALJ concluded that Petitioner can not return to her former work as a general farm worker or harvest worker because such work would require her to perform tasks that are beyond her current residual functional capacity.  (AR 22, 24).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),

**MEMORANDUM DECISION & ORDER -6-**

404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  In this respect, the ALJ found that, based upon Petitioner's residual functional capacity, she is capable of performing a significant range of light work as defined in 20 C.F.R. § 416.967.  (AR 22, 24).  Petitioner's ability to perform all, or substantially all, of the requirements of light work is impeded by additional exertional or non-exertional limitations.  (AR 22).

The ALJ asked the vocational expert whether jobs exist in the national economy for an individual of Petitioner's age, education, past relevant work experience, and residual functional capacity.  (AR 23, 230–34).  The vocational expert testified that Petitioner could perform unskilled light work assembling plastic hospital products or assembling toys.  (AR 23, 233).

**B.**     **Analysis**

Petitioner challenges the ALJ's (1) conclusion that Petitioner did not meet or equal the requirements of Listing 3.03 for asthma, (2) rejection of the opinions of Petitioner's treating medical providers, and (3) denial of Petitioner's motion for an IQ exam.  *Petitioner's Brief in Support of Petition for Review*, p. 2 (Docket No. 11).

   **1.**     **Listing 3.03 for Asthma**

For a claimant to meet Listing 3.03, the claimant must have asthma with

> [a]ttacks (as defined in 3.00C), in spite of prescribed treatment and
> requiring physician intervention, occurring at least once every two months
> or at least six times a year.  Each in-patient hospitalization for longer than
> 24 hours for control of asthma counts as two attacks, and an evaluation
>
> period of at least 12 consecutive months must be used to determine the
> frequency of attacks.

Attacks are defined in 3.00C as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or

**MEMORANDUM DECISION & ORDER -7-**

prolonged inhalation bronchodilator therapy in a hospital, emergency room or equivalent setting."

In step three of the evaluation process, the ALJ concluded that Petitioner did not meet or equal the requirements in Listing 3.03 for asthma because "the evidence does not establish that [Petitioner] suffers attacks to the degree she satisfies Listing 3.03." (AR 18). That is, the ALJ noted that "[w]hile it is recognized that the claimant has undergone physician intervention on several occasion[s], it is further noted that she has not followed prescribed treatment and thus it cannot be established that she has the attacks to satisfy Listing 3.03." *Id*. Further, the ALJ pointed out that "the record does not show that she has required in-patient hospitalization for longer than 24 hours for control of asthma and has attacks occurring at least once [e]very two months or at least six times a year, in spite of prescribed treatment." *Id*.

        a.      **Attacks Satisfying Listing 3.03**

One of the reasons the ALJ found that Petitioner's attacks were not severe enough to fall within Listing 3.03 was that the record does not show that she had "required in-patient hospitalization for longer than 24 hours for control of asthma." *Id*. However, for an asthma attack to qualify under Listing 3.03, there is no requirement that the claimant be an in-patient in a hospital for longer than twenty-four hours. To the contrary, the attack must only qualify as a "prolonged symptomatic episode[] lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalation bronchodilator therapy in a hospital, emergency room or equivalent setting." *Listing 3.00C*. So, while being an in-patient in a hospital for longer than twenty-four hours for control of asthma would be a qualifying attack, it is not the only attack that would qualify. The ALJ's determination that Petitioner did not meet Listing 3.03 because, for at least one reason, she did

**MEMORANDUM DECISION & ORDER -8-**

not have "in-patient hospitalization for longer than twenty-four hours for control of asthma" was not a decision based on proper legal standards.

Therefore, the Petition for Review must be granted and the action remanded for further proceedings during which the ALJ should determine whether Petitioner's asthma meets the requirements of Listing 3.03 in light of the definition of a qualifying asthma attack in 3.00C.

If the ALJ determines that Petitioner meets Listing 3.03 in light of Listing 3.00C, Petitioner must be found to be disabled and benefits awarded. In the event that the ALJ again finds that Petitioner does not meet Listing 3.03, the ALJ must proceed through the remainder of the evaluative process. For that reason and to prevent delay or future appeals on the grounds currently asserted by Petitioner, the Court will address the other issues Petitioner raised in her petition for review.

      **b.**    **Failure to Follow Prescribed Treatment**

In finding that Petitioner's asthma did not meet the requirements of Listing 3.03, the ALJ noted that Petitioner "has not followed prescribed treatment" and went on to point out that Petitioner failed to stop smoking, though frequently encouraged to do so by her treating physicians, and was not taking her prescribed medications because she was off her medical card and was trying to save money. (AR 20).

A claimant, who otherwise meets a disability criteria, may not be denied benefits for failing to obtain medical treatment that would ameliorate the claimant's condition if the claimant cannot afford that treatment. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Evidence in the record indicates that at least one reason Petitioner did not always take her prescribed medication was because she may not have been able to afford to do so. (AR 59, 194, 195).

**MEMORANDUM DECISION & ORDER -9-**

Aside from the cost issue, there is undisputed evidence in the record that Petitioner did not stop smoking, though her doctors emphasized that she should. (*See e.g.*, AR 171, 196, 201).

In finding that Petitioner did not follow prescribed treatment, i.e, that she did not take her medication and did not stop smoking, the ALJ did not make a finding as to whether Petitioner could afford to take the prescribed medications. Therefore, the Court cannot determine from the record whether the ALJ's decision as to Petitioner's failure to follow prescribed treatment is based on proper legal standards. Accordingly, on remand the ALJ must determine whether Petitioner could afford the prescribed medications.

If the ALJ finds Petitioner could afford the prescribed medication, then she failed to follow prescribed treatment by failing to take her medication and by failing to stop smoking. On the other hand, if the ALJ finds Petitioner could *not* afford her medication, the ALJ must determine whether Petitioner would meet Listing 3.03 had she stopped smoking, i.e., had she otherwise followed prescribed treatment. In that case, Petitioner would have the requisite attacks "in spite of prescribed treatment." *See Listing 3.03B*. In other words, by "in spite of prescribed treatment," the listing looks for attacks in spite of reasonably-available prescribed treatment. Treatment that a claimant cannot afford is not reasonably-available treatment. If the ALJ finds that Petitioner could not afford her medication but would have met the requirements of Listing 3.03 even had she stopped smoking, then Petitioner must be found disabled and benefits awarded.

### 2. Rejection of the Opinions of Petitioner's Treating Medical Providers

The Ninth Circuit Court of Appeals has held that a treating doctor's opinion is entitled to special consideration and weight.

> The medical opinion of a claimant's treating physician is entitled to "special weight." The treating physician's opinion is given that deference because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual."

*Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (citations omitted). However, the *Rodriguez* opinion goes on to explain that a "treating physician's opinion on the ultimate issue of disability is not necessarily conclusive." *Id*. at 762. The treating physician's opinion may be disregarded by the ALJ by setting forth "specific, legitimate reasons for doing so," as long as the decision is based on "substantial evidence," and the reasons for rejecting the doctor's opinions are "clear and convincing." *Id*. It is clear that the treating physician's opinion may be disregarded if it is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)).

In the instant action, when determining Petitioner's residual functional capacity, the ALJ did not give substantial weight to the opinions of L. Chip Roser, M.D., Petitioner's treating physician, and Faith Peterson, a certified registered nurse practitioner who treated Petitioner on several occasions. (AR 21; *see also* AR 171–201). In doing so, the ALJ set forth the following specific reasons for rejecting their opinions: (1) Dr. Roser's opinion was essentially just a concurrence "with the limitations and restrictions outlined in the residual functional capacity questionnaire completed by a certified registered nurse practitioner," i.e., Ms. Peterson; (2) Dr. Roser's opinion relied on the opinion of a nurse practitioner, who is not an acceptable medical source as defined by the regulations; (3) Dr. Roser appeared to have only examined the claimant on January 13, 2004, and that examination was rather brief; and (4) the ALJ found the

**MEMORANDUM DECISION & ORDER -11-**

residual functional capacity questionnaire was not supported by the overall evidence. (AR 21). The first two reasons raise the most concern.

The Code of Federal Regulations, Title 20, Section 416.913(a) lists acceptable medical sources who can provide evidence to establish an impairment. Certified registered nurse practitioners and the like are not included in that list. *See* 20 C.F.R. § 416.913(a). However, Section 416.913 goes on to note that "[i]n addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, [an ALJ] may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work . . . ." These other sources include nurse-practitioners. 20 C.F.R. § 416.913(d)(1).

The ALJ rejected Dr. Roser's and Ms. Peterson's opinions when determining Petitioner's residual functional capacity. (*See* AR 21). The residual functional capacity is used to determine whether the Petitioner can perform past relevant work or adjust to other work. 20 C.F.R. § 404.1520(e). In other words, the residual functional capacity is used to determine the severity of a claimant's impairments and how it affects the claimant's ability to work. A nurse-practitioner's opinion may be used as evidence in such a determination. 20 C.F.R. §416.913(d)(1). Accordingly, the ALJ's rejection of Dr. Roser's and Ms. Peterson's opinions in determining Petitioner's residual functioning capacity was, at least partially, not based on proper legal standards.[2] Therefore, on remand, if the ALJ finds Petitioner does not meet Listing 3.03 and revisits the fourth step of the evaluative process, the ALJ must either consider Dr. Roser's and Ms. Peterson's opinions, or, because Ms. Peterson is an acceptable medical source for a

---

[2] Because the ALJ's determination of Petitioner's residual functional capacity was based on several reasons, i.e., the four previously-noted reasons, it is not clear whether the ALJ would have come to the same conclusion had he applied proper legal standards by finding Ms. Peterson to be an acceptable medical source.

**MEMORANDUM DECISION & ORDER -12-**

residual-functional-capacity determination, must state other specific, legitimate reasons based on substantial evidence for rejecting their opinions.

### 3.     Denial of Petitioner's Motion for an IQ Examination

During the February 4, 2004, hearing before the ALJ, Petitioner requested a consultative examination to determine her IQ. (AR 206, 210, 222, 225). The ALJ took the motion under advisement, (AR 238), but never formerly addressed it one way or the other; therefore, he impliedly denied the motion. Petitioner challenges the implied denial. *Petitioner's Brief in Support of Petition for Review*, p. 2 (Docket No. 11).

As the government argues, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Respondent's Brief*, p. 11 (Docket No. 16) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001))). Because the ALJ did not specifically dispose of the motion for an IQ examination, the ALJ made no finding as to whether the evidence of Petitioner's alleged IQ impairment was ambiguous or whether the record was inadequate to allow for proper evaluation of the evidence.

The ALJ mentioned that "the medical evidence does not establish any medically determinable impairment of intellectual functioning." (AR 21). This statement implies that the ALJ found that there was clear evidence that Petitioner did not have an impairment of intellectual functioning, i.e., that the evidence was not at least *ambiguous* as to whether Petitioner had a medically determinable impairment of intellectual functioning. However, the ALJ does not support such a finding with, nor would such finding be supported by, substantial evidence in the record. To the contrary, after implying that Petitioner clearly does not have

**MEMORANDUM DECISION & ORDER -13-**

intellectual functioning limitations, the ALJ states that he "gives the claimant the benefit of the doubt and will assume some mild mental limitations as set forth in the residual functional capacity." *Id*. Additionally, J.B. Evans, who interviewed Petitioner and completed the Disability Report for the Social Security Administration, noted that Petitioner "may suffer from one or more mental disabilities." (AR 74).

Because there is evidence in the record that could support Petitioner's contention that she may have intellectual functioning impairments and because the ALJ took Petitioner's motion for an IQ examination under advisement but never specifically ruled on the motion, upon remand, the ALJ shall address the motion, and in doing so, shall consider whether there is ambiguous evidence on this issue or whether the record is inadequate for a proper evaluation of the intellectual-functioning evidence. If the answer to either inquiry is in the affirmative, Petitioner's motion for an IQ exam must be granted.

## VI.

## ORDER

For the reasons set forth above, the Court concludes that the ALJ's determination that Petitioner is not disabled within the meaning of the Social Security Act is not, at least in part, based on proper legal standards. Accordingly, the Commissioner's decision that Petitioner is not disabled within the meaning of the Social Security Act is reversed and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED: **March 29, 2006**.

Larry M. Boyle
United States District Court

**MEMORANDUM DECISION & ORDER -15-**